The appellate court of Illinois has announced that you may be seated. This is our first case in the morning, 414-0657, People of the State of Illinois v. Michael Holliday. For the appellant, Mr. Matthew, and for the athlete, Mr. Zimmer, you may proceed. May it please the court. My name is Shea Matthew, and I'm an assistant appellate defender, and I represent Michael Holliday in this appeal. This case considers three issues, which will be addressed in the following order. First, whether Michael Holliday was prejudiced when a jury referred to his trial counsel as a public defender in front of the jury. Second, whether the trial court erred when it failed to perform a crankle inquiry. And third, whether the trial court held a love hearing, and if not, what the appropriate remedy should be. Now first, regarding the issue of the public defender being identified in front of the veneer. This is a novel issue in the state of Illinois, and therefore there's no controlling precedent regarding this issue. Is there any precedent, period, persuasive even, from any state anywhere? There are other states that have addressed this, but not with these particular facts. So it's not only an issue of first impression, at least the way it's stated, it's an issue of first impression in the world. That's too broad. The United States. Essentially, yes. So this goes under a plain error analysis, because although... Tell me what the prejudice is. The prejudice? Yeah. Jury bias because of societal perceptions of public defenders. Well, societal perceptions would then dictate that two-thirds of the people on the jury would not be able to hire a private lawyer to represent their son. A representative jury, or maybe half. A lot of those people don't have sufficient funds up front to come up with a $5,000 retainer, which might be... And again, I'm just talking about societal norms, but the societal norms are built by anecdotes. And the anecdotes are, I don't want a public defender, I want a real lawyer. And yet some places, public defenders are great lawyers, and people on the jury, I don't know that they care. You think they do, though. You think there's a bias? The studies I've cited in the brief show that there is bias. In fact, the one, I believe it's Ogletree, which says judges convict defendants, whether they have a public defender or a private counsel, roughly equally. Whereas a jury convicts defendants at two times the rate as private counsel. And that shows bias. That shows some bias in that juries are able to pick up on at least some cues or that juries disfavor public defenders in some way. What if it is the public defender? That is also possible. For the county. That is also possible. But it isn't mentioned. I'm not understanding the question. The public defender of a county is sometimes very well known. And it's known they're the public defender. But it doesn't come out in four days. But again, some percentage of your jurors, particularly if your jurors are from the town of Quincy, for example, in Adams County, know who the people are in the courthouse. And they know that it's a public defender. Is there bias? I mean, we can't measure that bias, can we? No. I mean, there are always going to be cases where that essentially slipped through the cracks and we can't eliminate every single source of bias. Because undoubtedly, some jurors will be biased even without... What about the bias if you hire a particular attorney? Everybody that's guilty hires that guy. Because he's really good. Is that the perception? Or is it, if I get accused of a crime, I want the very best attorney? In that scenario, the defendant would have chosen... Yeah, because he's guilty. The perception is, if you go to that guy, you're probably guilty. Assuming you have some degree of economic well-being. You hire this great lawyer because you're dirty. Or do you hire this great lawyer because you can afford it? The studies have shown that generally jurors, when they judge the merits of the case based on who the trial counsel is, they perceive that when a defendant is willing to pay money for a lawyer, that he either has a strong case or that he's innocent. So in a case where the defendant has the option to pay for a private attorney or take the public defender, it almost signals to the jury that if it's a well-known... It isn't an option. You have to prove you're entitled to the public defender. Yes. So O.J. Simpson can't get a public defender. O.J. Simpson. Well, forget that one. That's not a very good reference point for anything. I better let you get on with it. And this is another type of bias would have been the stereotype that the defendant is poor. As you mentioned, often public defenders are appointed when the defendant doesn't have the ability to pay. This is analogous to Estalvi. I hope that's the only time they're appointed. Yes. And this is analogous to Estalvi Williams, which is a U.S. Supreme Court case where dressing in prison garb is one of the potential forms of bias that they couldn't afford to fail. So this is similar in that case. Even if this court finds that there was no prejudice here, this court should still remand this or remand to the trial court for Franklin. There's three issues. The first is that a claim of ineffectiveness was made in the trial court. Mr. Holliday made the statement that he didn't think he had a fair trial, that he was not able to speak to counsel about his case, and he felt that he had been railroaded through this case. And before he had made those statements, his trial counsel introduced him for elocution by saying that Mr. Holliday does not believe I've been an effective advocate. Further, the judge acknowledges the ineffectiveness when he says, you also suggest that your lawyer sold you out. So it's clear here that a claim of ineffectiveness was made. Following that claim, the judge did not make further inquiry. Mr. Holliday, after he made a statement, the judge was giving his sentence and his reasoning, and he did state that his lawyer did a commendable job. But that alone does not include an inquiry. And several times, Mr. Holliday tried to interrupt or state that, can I ask one question, to which the judge replied no. So there was no question and answer. This was not a discussion between the judge and Mr. Holliday. Is he required to talk it over with the defense? I mean, that's one way he could proceed, but I don't think there's anything that requires him to. The judge could have also inquired with his trial counsel or, based on his knowledge of the case, made a decision. However, in this situation, the primary claim that Mr. Holliday made is that he was not able to speak to counsel. Is that supported by the record? There's nothing in the record to establish that. And that's primarily because there was no factual inquiry made. Well, there's actually the opposite in the record, isn't there? Isn't there something in the record that shows that he had a meeting in her office and it went poorly? Or that he met with a public defendant? I don't recall. Well, the record shows the defendant met with his counsel in her office on January 16, 2014. So when he told the trial court he never had a chance to meet with his attorney, that was not correct. And it's not supported by the record. Regardless that he had the chance to meet, it does not necessarily mean he had the chance to talk through this case. He may have had witnesses that he wished to call. At the scene, there was another person who was present. And this factual situation could have been dealt with if the court had made a frank inquiry. And that's the reason why a frank inquiry exists. Because without the frank inquiry, we're left without the factual basis on which the judge decided. So, based on his knowledge, we don't know what kind of meeting took place between the public defender and Mr. Holliday. And in Peacock, the Illinois Supreme Court says that in some circumstances, the trial court is not in a position to evaluate all of the ineffective assistance claims. And in that scenario, the judge cannot make the determination without inquiring further. Now, as to the third issue, Mr. Holliday did not have a love hearing. And the state concedes that there was not an adequate love hearing. And therefore, the remedy should be that we vacate outright. Now, first, Summers requires that some sort of hearing take place within 90 days after the entry of the final order. If the state concedes it, what else is there to say? The state concedes that an inadequate hearing took place. It is our position that there was no hearing at all. Ah, yes. So it shouldn't be. It doesn't pay, period. We're done with this issue. It should be completely vacated. Yeah. Now, this was before the court in Campbell, but the court didn't specifically address that issue of what the appropriate remedy is. And the opinion didn't do extensive analysis. However, since Campbell was decided, the 1st District and more has provided some guidance. They held that, at least, that for an inquiry to be made, there has to be some question as to the dependence of the legal payer. Some are even looking through the worksheet. Here, none of that occurred. There was no consideration on Mr. Holliday's financial circumstances, his financial documents, or his foreseeable ability to pay. Did the court consider the cash bond he posted? He had $500 in cash bond debt. Yes, he did. But the Illinois Supreme Court has said that that alone cannot be determined. Well, that might be true, but the issue here is, was there some kind of a consideration made by the trial court, such that remand would be appropriate for the court to give a full hearing, as opposed to no hearing or no consideration at all of the financial circumstances of his claim. Yes, Your Honor. It is our interpretation that Love and Sommer say that that is not necessarily a foreseeable ability to pay, because oftentimes the cash bond is not provided by the defendant. It could be provided by family. It's not necessarily his money. Well, when people post a cash bond, there's a segment that they actually sign acknowledging that that cash bond can be used for attorney's fees and for fines and costs. So whoever posts that bond is subject to being used. Now, the court is under the statute to give consideration if it chooses to the fact that somebody else posted the bond. But that does not mean that they can't order the posted bond to be applied to attorneys. And we agree that the court conducted an appropriate love hearing that that bond money could have been used for this purpose. But our position is that there was no love hearing. And this is a fast evolving area of law. Since Campbell in 2013, Moore was decided in 2015. And the Second Circuit has weighed in Castillo, which I motioned for as a supplemental authority. Castillo declines to follow Williams, which is the Second District's earlier position that a remand was appropriate. It's impractical for the court to continue to remand these cases. The Supreme Court has expressed that it does not want trial courts to continually assess these fees without a love hearing. And if the remedy is continually to remand this back to the trial court, there is no consequence. Counsel, your argument is that the First and Second District have held that some sort of hearing requires an inquiry into the issue of the defendant's ability to pay. Yes. Are the Third, Fourth, and Fifth District's cases contrary to the position taken by the First and Second District at this juncture? Since Summers, the Fifth has not decided the issue. The Third had two opinions. One in Spronsky, that was 2014, and McClinton. And they did remand on both of those, but in the McClinton there was an inadequate hearing. In Spronsky, very much like Campbell, they didn't address the issue of vacating versus remanding. That issue never really came up until Moore was decided in 2015. So just to clarify, under the facts that we have here, it's your position that the First and Second District would say that the hearing held was not enough because there was no inquiry into the ability to pay, and therefore, case closed, no remand, no fee imposed. It would be my understanding, based on the facts of these cases, very similar to both Moore and Williams. They declined to follow Williams. Now, if there aren't any further questions. Thank you. We'll hear from you on rebuttal. May it please the Court. Good morning, Your Honors. My name is John Zimmerman. I'm from the Fourth District, Appellate Prosecutor's Office. The State would like to begin today with discussing the alleged jury bias. The defendant argues the trial court erred when it did not declare a mistrial after a juror identified the defendant's counsel as a public defender. The State disagrees. As counsel acknowledged, this issue was forfeited as it was not raised in a written post-trial motion. With that being said, plain error analysis applies. This would be the second prong, which states that a clear or obvious error occurred, and that error was so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. The State does not agree with the defendant that this is that serious of an error. You agree it was error? Do we agree? It was error. Oh, no. I'm sorry, Your Honor. We didn't speak. The State disagrees that it was not that serious of an error, or was that even an error at all? You might want to say it's not an error at all. It is not an error at all. Or, if an error was not serious. My apologies, Your Honor. As Your Honor stated, this defendant acknowledged this is not supported by any legitimate president or authority, and we do not think this court should entertain this issue. Additionally, there's no evidence... Lots of courts have considered studies. We're starting to see that with eyewitness... Not starting, but it's been around for a while. There are studies that suggest eyewitness testimony is terrible. There are studies that suggest co-defendants are liars, or perceptions of such things. So, why shouldn't this be considered? I mean, it was innocent, and it was actually a legitimate answer to the question, but then it came out. If such bias exists, should it at least be explored? Yes. Should it be explored? The purpose of Gwadir is to explore the potential bias within the jury, and we believe that in this case, the trial court stated that it was a slip. It wasn't dwelled upon. He didn't think, from his perspective, which is obviously the most helpful, that it was any issue by any jurors. He didn't notice any potential prejudice that could have come about from it, and so the state contends that the proper remedy was to keep it within the trial court's discretion. And it was proper for the trial court to not draw any further attention to this through the Gwadir proceedings, because going forward and asking the juror, well, would it bias you, the defendant's counsel as a public defender, that even further plants the seed of why would the judge be asking us that? Is it true? So the state contends that the trial court was in the best position to determine any potential bias. Its decision to move forward without declaring a mistrial was proper, and the state requests the court to not entertain the defendant's argument in this regard. The second issue was the ineffective assistance claims. Now, counsel stated that the trial court was aware of the ineffective assistance claims. The state initially argued in its brief that the defendant's statements alone did not bring the ineffective claims to the trial court's attentions. He stated he didn't think it was a fair trial, yet he had the utmost respect for this lady. They haven't sat down and talked. There was no specific sufficiently articulated theory of ineffective assistance of counsel, and he cannot reasonably expect the trial court, unaided, to determine these claims. Now, as the record shows, defense counsel prior to defendant's statements did tell the court, defendant does not believe I've been an effective advocate on his behalf thus far. So the court was on notice regarding these claims. Now, regardless of whether defendant's statements were sufficient or not, the state further argues that sufficient crankle inquiry were performed through two different ways. The trial court questioned the defendant. Prior to defendant's statements to the court, the trial court stated,  From the state's review of the record, I believe it was five or six pages of the defendant just talking continuously. And within that, there was this claim previously referenced of trial counsel's assistance. And after this, the trial court then acknowledged trial counsel's assistance throughout this trial and stated that, from what I observed, as the judge sitting in that trial, your lawyer did a commendable job. So as the trial court inquired with the defendant, there was a discussion going back and forth. That's enough to satisfy a crankle inquiry. And then the trial court also relied on its own knowledge of trial counsel's performance as the trial judge was the judge throughout the entire proceedings. That's also sufficient for a crankle hearing. So there were two proper crankle inquiries here. And the state requested the court to affirm the trial court's decision regarding the ineffective assistance issues, which ended up denying those defendant's claims. The third issue that the state would like to discuss is the public defender reimbursement fee. The defendant argues this court should vacate the order outright. The state argues that it should be vacated, but it should be remained for a hearing, as your honors and defense counsel previously discussed. The main issue is whether some sort of hearing occurred. Defense counsel cited various different cases. The state requests this court to follow Williams as well as the past president of this court, which has been continuously. So the state disagrees with the Castillo case? Castillo. That's the recent one that was just filed. Yes. From my recollection, the state does disagree with that. So if we adopt the state's position, would our ruling be contrary to what the 1st and 2nd districts have found? The 1st and 2nd districts? Yeah, that would be Castillo who cites the 2nd district where they disavow prior decisions. Well, the issues with these cases, I'm looking at Rankin, which is the 1st district, 2015, and this was remanded back after the trial court. There was evidence on the record that the trial court asked the public defender how many times has he appeared. So the issue that your honors were discussing and defense counsel were discussing and I'm going to be discussing are what kind of inquiry is required. And the Williams courts, I think, really lays it out really well. They say some sort of hearing only requires, they use Black's Law Dictionary to define what is a hearing. Isn't that the case that is disavowed by the 2nd district in Castillo? Is Williams the case that they disavow? I'm not sure, your honor. I think it is counsel. Okay. They've backed away from their holding in Williams. Oh, they have? That's Castillo. All right. So just to begin with Williams, that's a very broad definition, a broad interpretation, because the fee is imposed in open court with the parties present within the 90-day time limit. And as your honor said, they backed away from that. So there has to be some sort of inquiry that's present. And in this case, the defendant is arguing there wasn't, but the record does show when the trial court addressed the defendant that he said, considering your financial circumstances, that's showing that the trial court probably did rely on something within the record. He knows that the defendant is financially, has financial issues. And so I think this shows whether it was the recent investigation report or whatever the trial court relied upon, that it did rely upon something. And it was not just... Well, counsel, the language, the key language, apparently, according to Castillo and Moore is, was there some sort of hearing where an inquiry, however slight, into the issue of the defenseability of pay, the public defenseability of pay, occurred? What's your position here under these facts? Was there a hearing where there was an inquiry, however slight, into the issue of the defenseability of pay? Yes, the state's position was that there was. What was that inquiry? I believe the inquiry was... I don't, I'm not too fresh with the facts, but I believe that the fact that the court made the statement that, regarding the defendant's financial circumstances, that that qualifies as an inquiry. Okay. It seems like an inquiry would almost have to be a question to me, but maybe not. Maybe just a statement by the court. Well, the state's position is that it could demonstrate that the court had, This is some of the issues throughout these cases. What is an inquiry? And so is it a question to the defendant? Is it a question to the public defender? Is it an inquiry looking into the record throughout the proceedings? The state's position is that, as Justice Pope stated, there's evidence within the record saying the defendant's ability to pay, whether it's on a cash bond or whether it's from the recent investigation report, that there's evidence the trial court can utilize the record to determine whether the defendant has this, so as to some sort of hearing occur. And the intent behind the statute is to allow the state and counties to be reimbursed for the time that they put into the cases. And so I think it should be broadly interpreted to ensure that some sort of hearing has taken place, and if that requires a remand, if the first one's inadequate, then that should be the case. Well, I think the Fourth District has kind of gone along with that argument, but now we have the First and Second Districts apparently interpreting the statute a bit differently. Yes, Your Honor. So with that being said, the state requests this court to vacate the fee and remand for a further hearing on the issue, if there's no further questions. Thank you for your time. Thank you. Rebuttal? Your Honor, the reason we have cranial inquiries and love hearings is so that we can have a factual record of whether counsel was ineffective or if a defendant didn't have the ability to pay. When the trial courts do not conduct these hearings or perform inquiries, we're left with a record that's not complete. That's why it's really important that the trial courts perform these. And in this case, we have an issue with a cranial inquiry not being imposed. We also have an issue with the love hearing not occurring. Well, when the public defender makes a statement regarding, my client has suggested to me that he's unhappy, and then the trial court gives the opportunity for the defendant to state something, and in this case, I think maybe even you would agree that the defendant rambles. I mean, he's really, in part, it sounds like he's a, why in the world are you prosecuting me when there are a lot of worse people out there in the world? Which is probably not the best argument to make, but he is making a statement about his dissatisfaction. Why does the trial court have to ask him additional questions, or ask the public defender to say more, if based upon what the defendant is saying, it doesn't rise to the level of being ineffective at all, when weighed against the trial court's observation of the trial, and how defense counsel proceeded, and it doesn't say anything further. I mean, why isn't that a minimal, but nonetheless, a crankled hearing? Because crankled doesn't say, you have to ask defense counsel. It says you may proceed in this way. You can inquire, you can evaluate, you can decide what you want to do. I mean, he let the defendant talk quite a bit. The defendant stated that he was not able to speak to counsel about this case. That's not anything that concerns trial counsel's ability in the courtroom. But if we are correct in asserting that the record shows that there was a meeting in office, and then there's reference to it not going well, does that contradict the defendant? That the meeting was not going well? No, that the meeting occurred. I've never met with my counsel and we haven't had a chance to talk about it. And the record says there was a meeting in the office of counsel. The judge didn't inquire as to what that meeting was. Does he have to inquire? Is this contradictory of what the record shows? Without that inquiry, we have no factual basis to decide that on. And this concerns the Sixth Amendment right to counsel. This is a very important right. And it's a minimal requirement of the judge to ask Ms. Hens, did you meet with Mr. Holiday? It's not a strenuous requirement that we're asking. And the remedy is that we would go back and we would find what sort of representation he had. It's not going to affect his conviction. We're not asking to vacate his conviction on this Crankle issue, but we're just merely asking for the facts that he alleged that he was not able to speak to his counsel, what he meant by that. Without the Crankle inquiry, we don't know. It would be... Go ahead. Do you have further questions? No. I was going to make an editorial comment. With regards to the Love hearing, the statutory counsel addressed Rankin. Rankin had an inquiry. It was a defective inquiry, which is different from this case. And just to go to the statute, the statute is very clear that this is a mandatory requirement. It says that the trial court shall not hold a hearing, or let me get the actual phrase. Such a hearing shall be conducted, and to skip ahead a bit, no later than 90 days. So it's a requirement that's mandatory to the trial court that it's held within 90 days. And the court doesn't have the authority, aside from the statute, to assess this. I see that my time is up now. You can finish that sentence. The court does not have the authority, because it says that they may assess the fee. Without the statutory language, they cannot assess that fee. My editorial comment is that it would be wonderful, given the dates of the decisions in Crankle and Love, that trial courts, and I don't want to criticize trial courts, but it would be good if they caught up to speed and did that very simple, but then objective Crankle hearing and Love hearing. But then they might not need as many appellate defenders. Thank you.